DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
BRENDAN N. CHARNEY (State Bar No. 293378)
  brendancharney@dwt.com
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

LOS ANGELES TIMES COMMUNICATIONS LLC
JEFF GLASSER (State Bar No. 252596)
202 West First Street
Los Angeles, California 90012
Telephone:  (213) 237-3760
Fax:  (213) 237-3810

Attorneys for Non-Party Press Organization
LOS ANGELES TIMES COMMUNICATIONS LLC

FILED
CLERK, U.S. DISTRICT COURT

July 16, 2018

CENTRAL DISTRICT OF CALIFORNIA
BY:  ___VRV___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JOHN SARO BALIAN, <br><br> Defendant. | Case No. CR 18-345-JFW <br> **FILED UNDER SEAL PURSUANT TO JULY 14 2018 COURT ORDER** <br> OPPOSITION OF NON-PARTY MEDIA ORGANIZATION LOS ANGELES TIMES COMMUNICATIONS LLC TO UNCONSTITUTIONAL PRIOR RESTRAINT AND TAKEDOWN ORDER; SUPPORTING DECLARATIONS OF KELLI L. SAGER, JACK LEONARD, AND ALENE TCHEKMEDYIAN WITH EXHIBITS A-I <br><br> Hearing Date:  July 18, 2018 <br> Time:  9:00 a.m. <br> Courtroom:  Hon. John F. Walter |

# TABLE OF CONTENTS

I.     SUMMARY OF ARGUMENT ...................................................................... 1

II.    THIS COURT SHOULD VACATE ITS ORDER BECAUSE IT IS AN UNCONSTITUTIONAL PRIOR RESTRAINT ON SPEECH................................................................................................... 8

    A.    Prior Restraints Are Presumptively Unconstitutional. ......................... 8

    B.    The Press And Public Have A First Amendment Right To Publish Information Disclosed In Court Proceedings And Records. ........................................................................................... 11

    C.    Defendant Cannot Satisfy The Stringent Standard Required To Justify A Prior Restraint.................................................................. 16

    D.    Courts Uniformly Reject Prior Restraints Where, As Here, The Information Already Was Available To The Public. .................. 19

III.   CONCLUSION........................................................................... 21

OPPOS. TO RESTRAINING ORDER

4836-2340-9517v.2 0050033-000508

i

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Cases**

Ashcraft v. Conoco, Inc.,
  218 F.3d 288 (4th Cir. 2000) ........................................................ 6

Associated Press v. District Court,
  705 F.2d 1143 (9th Cir. 1983) ................................................... 1, 7

Bank Julius Baer & Co. v. Wikileaks,
  535 F. Supp. 2d 980 (N.D. Cal. 2008) ......................................... 20

Bantam Books, Inc. v. Sullivan,
  372 U.S. 58 (1963) ......................................................................... 8

Burch v. Barker,
  861 F.2d 1149 (9th Cir. 1988) ............................................... 11, 17

California Comm'n on Peace Officers Standards & Training v. Superior
  Court,
  42 Cal. 4th 278 (2007) ................................................................ 18

CBS, Inc. v. United States Dist. Court,
  729 F.2d 1174 (9th Cir. 1983) ................................................. 7, 22

CBS v. Davis,
  510 U.S. 1315 (1994) .................................................. 4, 10, 11, 18

Cooper v. Rockford Newspapers, Inc.,
  34 Ill. App. 3d 645, 339 N.E.2d 477 (1975) ............................... 21

Cox Broadcasting v. Cohn,
  420 U.S. 469, 496 (1975) ..................................................... passim

Craig v. Harney,
  331 U.S. 367 (1947) ..................................................................... 12

Elrod v. Burns,
  427 U.S. 347 (1976) .................................................................... 2, 8

Florida Star v. B.J.F.
  491 U.S. 524, 538 (1989) ..................................................... 6, 7, 16

OPPOS. TO RESTRAINING ORDER
4836-2340-9517v.2 0050033-000508

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*FMC Corp. v. Capital Cities/ABC, Inc.,*
   915 F.2d 300 (7th Cir. 1990) ............................................................... 5

*Freedman v. Maryland,*
   380 U.S. 51 (1965)................................................................................. 8

*Freedom Communications, Inc. v. Superior Court,*
   167 Cal. App. 4th 150 (2008) ............................................................. 17

*Garcia v. Google, Inc.,*
   786 F.3d 733 (9th Cir. 2015) ...........................................3, 5, 6, 8, 19

*Goldblum v. NBC,*
   584 F.2d 904 (9th Cir. 1978) .................................................... 7, 11, 22

*Hunt v. NBC,*
   872 F.2d 289 (9th Cir. 1989) .......................................................... 11, 22

*Hurvitz v. Hoefflin,*
   84 Cal. App. 4th 1232 (2000) .................................................... 7, 17, 20

*In re Charlotte Observer,*
   921 F.2d 47 (4th Cir.)................................................................. 3, 21, 22

*In re Providence Journal Co.,*
   820 F.2d 1342 (1st Cir. 1986)............................................................. 19

*In re Shortridge,*
   99 Cal. 526 (1893) .............................................................................. 12

*Kansas v. Alston,*
   256 Kan. 571 (1994) ........................................................................... 21

*Kash Enters., Inc. v. City of Los Angeles,*
   19 Cal. 3d 294 (1977) ........................................................................... 3

*Landmark Communications, Inc. v. Virginia,*
   435 U.S. 829 (1978).................................................................... 6, 14, 23

*Las Vegas Review-Journal v. Eighth Judicial District Court,*
   412 P.3d 23 (Nev. 2018) ..................................................................... 21

*Long Beach Police Officers Ass'n v. City of Long Beach,*
   59 Cal. 4th 59 (2014) .......................................................................... 18

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Marcus v. Search Warrants of Property,
367 U.S. 717 (1961) ....................................................................... 3

Menendez v. Fox Broadcasting,
22 Med. L. Rep. 1702 (C.D. Cal. April 19, 1994) ........................ 19

Near v. Minnesota,
283 U.S. 697 (1931) ............................................................ 4, 10, 22

Nebraska Press Ass'n v. Stuart,
427 U.S. 539 (1976) ............................................................. *passim*

New York Times v. United States,
403 U.S. 713 (1971) ............................................................. *passim*

Oklahoma Publishing Co. v. District Court,
430 U.S. 308 (1977) .................................................................. 6, 14

Organization for a Better Austin v. Keefe,
402 U.S. 415 (1971) .................................................................. 9, 16

Patterson v. Colorado,
205 U.S. 454 (1907) ..................................................................... 23

Philadelphia Newspapers, Inc. v. Hepps,
475 U.S. 767 (1986) ..................................................................... 23

Procter & Gamble Co. v. Bankers Trust Co.,
78 F.3d 219 (6th Cir. 1996) ................................................. 6, 16, 17

Sheppard v. Maxwell,
384 U.S. 333 (1966) ................................................................ 13, 23

Smith v. Daily Mail Publ'g Co.,
443 U.S. 97 (1979) .................................................................. 14, 16

Southeastern Promotions v. Conrad,
420 U.S. 546 (1975) ....................................................................... 9

State ex rel. Superior Court v. Sperry,
79 Wn. 2d 69, 483 P.2d 608 (1971) ............................................. 21

State v. Coe,
101 Wn. 2d 364, 679 P.2d 353 (1984) ......................................... 21

OPPOS. TO RESTRAINING ORDER
4836-2340-9517v.2 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Steiner v. Superior Court,
      220 Cal. App. 4th 1479 (2013) ................................................................. 8

Sun Co. of San Bernardino v. Superior Court,
      29 Cal. App. 3d 815 (1973) ..........................................................*passim*

Time, Inc. v. Firestone,
      424 U.S. 448 (1976) ................................................................................ 23

United States v. McKenzie,
      735 F.2d 907 (5th Cir. 1984) .................................................................. 19

United States v. The Progressive, Inc.,
      467 F. Supp. 990 (W.D. Wis. 1979) ....................................................... 17

United States v. The Progressive, Inc.,
      610 F.2d 819 (7th Cir. 1979) .................................................................. 17

United States v. Salameh,
      992 F.2d 445 (2d Cir. 1993) ................................................................... 19

United States v. Smith,
      123 F. 3d 140 (3d Cir 1997) ............................................................. 20, 21

**Statutes**

California's Public Records Act ................................................................ 18

**Rules**

Federal Rules of Appellate Procedure 276-3 ............................................ 1

**Constitutional Provisions**

First Amendment ....................................................................*passim*

Sixth Amendment ................................................................................ 4, 19

Fourteenth Amendment .................................................................... 13, 14

**Other Authorities**

"Symposium: Weapons of Mass Destruction, National Security, and a
      Free Press: Seminal Issues as Viewed through the Lens of the
      Progressive Case," 26 Cardozo L. Rev. 1337, 1358 (2004-2005) ........ 17

OPPOS. TO RESTRAINING ORDER
4836-2340-9517v.2 0050033-000508

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

J. Mintz, "The Remains of Privacy's Disclosure Tort," 55 Md. L. Rev.
425, 455 (1996) ................................................................ 11

R. Smolla, Smolla & Nimmer on Freedom of Speech § 15:10 (2004) ...................... 10

OPPOS. TO RESTRAINING ORDER
4836-2340-9517v.2 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Los Angeles Times Communications LLC ("The Times") respectfully submits this Opposition Brief in response to this Court's July 14, 2018 Order, which ordered The Times to refrain from "disclosing" or publishing any portion of a plea agreement in the above-referenced criminal case. See attached Declaration of Kelli L. Sager with Exhibit G.[1]  The Order also demanded that The Times "remove[] and delete[]" an article that already had been published on The Times' website, and orders The Times to return all copies of the plea agreement – which The Times lawfully obtained – to the U.S. Attorneys' office. Id.

As discussed in this Opposition Brief, which has been filed under seal in accordance with this Court's order, prior restraints on speech – like the one issued by this Court on Saturday, July 14, without any notice to The Times and without giving it an opportunity to be heard – are presumptively unconstitutional.  Because Defendant has not and cannot satisfy the stringent burden necessary to justify a restraint on First Amendment rights, this Court should immediately vacate its Order. It also should immediately unseal this Opposition Brief and related materials submitted by The Times, in accordance with well-established constitutional rights of public access to court records.[2]

## I.   SUMMARY OF ARGUMENT

This Court's July 14 order forbids The Times from reporting information about a case of substantial public interest, which it obtained lawfully from the court's electronic records database, PACER, when the Defendant's plea agreement was

---

[1] On Sunday, July 25, 2018, The Times filed an Emergency Petition For Writ Of Mandate and an Emergency Motion For Stay with the Ninth Circuit Court of Appeals, pursuant to FRAP 276-3, seeking to immediately vacate this Court's order, or stay it pending a resolution of The Times' Petition.  As of the filing of this Opposition Brief, The Times has not received a ruling on its Petition or Motion.

[2] See, e.g., Associated Press v. District Court, 705 F.2d 1143, 1147 (9th Cir. 1983) (recognizing public's and press' constitutional rights of access to court records and finding provisional sealing order of even 48 hours violated First Amendment).

OPPOS. TO RESTRAINING ORDER
4836-2340-9517v.2 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

publicly available.  The order – entered on an ex parte basis, without giving The Times any opportunity to respond, and without even allowing The Times to see the Defendant's application – also orders the immediate "remov[al] and delet[ion]" of an article that already had been published on The Times' website before this Court issued its order.  The United States Supreme Court has described such prior restraints on speech as the "most serious and least tolerable infringement on First Amendment rights."  Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976).  No grounds justify this violation of The Times' constitutional rights.[3]

As a threshold matter, there can be no serious doubt that the underlying criminal case involves a matter of substantial public importance, in which a Glendale, California police detective has admitted engaging in illegal conduct.  See Declaration of Jack Leonard at ¶1-3;  Exs. A-C.[4]  Defendant John Saro Balian pleaded guilty to serious crimes involving his relationship with the Mexican Mafia, including obstruction of justice, lying to federal authorities, and attempted bribery. Id.  The Times has been reporting on the proceedings involving Balian's arrest and conviction.  Exs. A, B.

On July 12, 2018, Balian's change of plea, under a plea deal with federal prosecutors, was announced in open court, and recorded in the district court's minutes.  Ex. C.  Although the plea agreement itself was initially filed under seal, it subsequently was posted on the court's publicly-available PACER electronic document system, where it was obtained by a Los Angeles Times reporter.  Id., Ex. B; Declaration of Alene Tchekmedyian ¶ 3.  When Balian's counsel learned that The Times had a copy of the plea agreement, he apparently submitted an ex parte

---

[3] It is well established that the "loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury …." Elrod v. Burns, 427 U.S. 347, 373 (1976); see also Section 1.A., infra.

[4] The declarations and exhibits attached to this Opposition were provided to the Ninth Circuit in connection with The Times' emergency filings yesterday.

OPPOS. TO RESTRAINING ORDER
4836-2340-9517v.2 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

application to this Court, seeking a TRO.  That application was not served on The Times,[5] nor was The Times given any opportunity to be heard.[6]  Instead, less than two hours after The Times published an article on its website about the plea agreement (Ex. B), Defendant's counsel emailed a copy of this Court's prior restraint order to The Times' counsel.  (Exs. G, H.)

This Court's order not only forbids The Times from publishing information about a document that it lawfully obtained – a prior restraint on speech that by itself violates well-established constitutional principles, as discussed below – it also required that any article published <u>before</u> the order was issued be "deleted and removed forthwith."  Ex. H.  This attempt to unring the bell by forcing The Times to remove information from an article that it already had published on its website independently violated its First Amendment rights.[7]  This Court should immediately vacate its order in its entirety.

As former U.S. Supreme Court Justice Harry Blackmun declared, in granting an emergency stay of a prior restraint against a news organization, prior restraints on

---

[5] In fact, this Court's order mandated that TheTimes <u>not</u> be served with a copy of the Application.  Ex. H at 2.  The order, which apparently was prepared by Defendant's counsel, does not include any findings of fact or legal authorities supporting the ruling.  Ex. H.

[6] The Times was entitled to notice and an opportunity to be heard before entry of this Court's Order.  <u>See, e.g.</u>, <u>Marcus v. Search Warrants of Property</u>, 367 U.S. 717, 736-37 (1961) (distributors suffered unconstitutional denial of due process where state seized allegedly obscene publications without notice or a hearing prior to seizure, impairing distributors' freedom of speech); <u>Kash Enters., Inc. v. City of Los Angeles</u>, 19 Cal. 3d 294, 308 (1977) ("the Constitution generally requires that an individual be accorded notice and some form of hearing before he is deprived of a protected property or liberty interest").

[7] <u>See</u> <u>Garcia</u>, 786 F.3d at 740; <u>In re Charlotte Observer</u>, 921 F.2d at 50 (vacating injunction, and explaining that "[o]nce announced to the world, the information lost its secret characteristic, an aspect that could not be restored by the issuance of an injunction").

---

OPPOS. TO RESTRAINING ORDER
4836-2340-9517v.2 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

publication – like this Court's July 14 order – are a "most extraordinary remedy" that may be used "only where the evil that would result from the reportage is both great and certain and cannot be militated by less intrusive measures." CBS v. Davis, 510 U.S. 1315, 1317 (1994) (Blackmun, J., in chambers) (emphasis added).  Under well-established constitutional principles, prior restraints may be justified, if at all, only in the rarest circumstances, such as to prevent the dissemination of information about troop movements during wartime, Near v. Minnesota, 283 U.S. 697, 716 (1931), or to "suppress[] information that would set in motion a nuclear holocaust." New York Times v. United States, 403 U.S. 713, 726 (1971) (Brennan, J., concurring).  To date, those circumstances have remained purely hypothetical; the Supreme Court consistently has invalidated prior restraints, even where substantial interests could be impaired by the publication sought to be enjoined.  See, e.g., Near, 283 U.S. at 716-718 (invalidating prior restraint against defamatory and racist publication that allegedly disturbed the "public peace"); Nebraska Press, 427 U.S. at 556-561 (invalidating prior restraint against publication of information about criminal defendant's confession, despite alleged risk to Sixth Amendment rights); New York Times, 403 U.S. at 714 (invalidating prior restraint against publication of the "Pentagon Papers," despite the government's argument that disclosure of that information posed a "grave and immediate danger" to national security).

Given this clear authority, Defendant cannot come close to meeting his heavy burden.  Although The Times has not been given any rationale for this Court's order – it does not contain any explanation or findings, and it expressly precludes The Times from receiving a copy of the ex parte application on which the order apparently was based – counsel for Defendant claimed, in his threatening email on Saturday morning, that disclosure of the terms of the plea agreement would put Defendant and his family at risk.  Ex. E.  But this bare assertion is not nearly enough to justify the extreme relief this Court has ordered.  The fact that Defendant has entered into a plea agreement is no secret; it was referenced in open court, and was

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

referenced in news reports not only by The Times, but by other news organizations as well.  The minutes from the court proceeding on July 12, which are still publicly available through PACER, expressly state that there was a <u>plea agreement</u>, which is now under seal.  Ex. C.  To the extent that Defendant fears possible retaliation, if he is believed to be cooperating with authorities, that risk already exists.  No reasonable grounds exists for believing the Plea The Times' article, which this Court ordered to be "deleted and removed," increases that risk.  This kind of tenuous and speculative alleged 'threat' does not come close to satisfying the heavy burden required to justify a violation of a newspaper's constitutional rights.

Moreover, an even higher standard should have been required for the portion of the order requiring The Times to "remove[] and delete[]" an article that already was published on its website.  As the Ninth Circuit held in its <u>en</u> <u>banc</u> decision in <u>Garcia v. Google, Inc.</u>, 786 F.3d 733 (9th Cir. 2015) such an order is a <u>mandatory injunction</u>, because it requires the publisher to take "affirmative action – to remove" information from a website where it already was published .  786 F.3d at 40.  Because a mandatory injunction "'goes well beyond simply maintaining the status quo'" it is "'particularly disfavored.' … The 'district court should deny such relief unless the facts and law <u>clearly favor'</u> the moving party.'"  <u>Id.</u> (citations omitted).  Such mandatory injunctions, "should not issue in 'doubtful cases.'"  <u>Id.</u>[8]

Here, Defendant apparently did not even consider, let alone provide evidence sufficient to satisfy, this exacting test.  Instead, this Court's order appears to have modified to add language compelling The Times to take down an article that already

---

[8] This principle applies equally to the portion of the Order requiring The Times to return all copies of the plea agreement.  <u>See</u>, <u>e.g.</u>, <u>FMC Corp. v. Capital Cities/ABC, Inc.</u>, 915 F.2d 300, 305 (7th Cir. 1990) (refusing to require ABC to return all copies of documents allegedly provided in violation of confidentiality requirement; court held "ABC is free to retain copies of any of FMC's documents in its possession (and to disseminate any information contained in them) in the name of the First Amendment").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

had been published on its website – most likely after The Times' counsel notified Defendant's counsel that an article already had been published.  But the standard set forth in the Order does not take into account this change, or the mandatory nature of the takedown order.  Ex. H.  For this reason alone, it should be vacated immediately. Given the overwhelming law concerning the unconstitutionality of prior restraints, and the exacting standards required before such orders ever are to be permitted, Defendant did not and cannot meet the burdens outlined by the en banc Court in Garcia.

Furthermore, as a general matter, restraining the press to prevent the dissemination of confidential or sealed documents is unjustified.  E.g., Procter & Gamble Co. v. Bankers Trust Co., 78 F.3d 219, 225-27 (6th Cir. 1996) (reversing TRO enjoining publication of leaked documents sealed by court order, criticizing the district court for not "realiz[ing] that it was engaging in a practice that, under all but the most exceptional circumstances, violates the Constitution"); Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 845-846, 849 (1978) (confidential proceedings of Judicial Inquiry and Review Commission); Ashcraft v. Conoco, Inc., 218 F.3d 288, 293 n.2, 301 (4th Cir. 2000) (reversing contempt order against reporter who published the amount of a confidential settlement after court clerk inadvertently provided reporter with sealed documents).

In Florida Star, the Supreme Court reminded that it is the responsibility of the government to deal with the fallout from the government's failure to protect confidential information:

> Where, as here, the government has failed to police itself in disseminating information, it is clear under Cox Broadcasting, Oklahoma Publishing, and Landmark Communications that the imposition of damages against the press for its subsequent publication can hardly be said to be a narrowly tailored means of safeguarding anonymity.  [CITATION OMITTED.]. Once the government has placed such information in the public domain, 'reliance must rest upon the judgment of those who decide what to publish or broadcast.' Cox Broadcasting v. Cohn, 420 U.S. 469, 496 (1975), and hopes for restitution must rest upon the willingness of the government to compensate victims for their loss of privacy and

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

to protect them from the other consequences of its mishandling of the information which these victims provided in confidence.

Florida Star v. B.J.F., 491 U.S. 524, 538 (1989).

Here, as in Florida Star, the government placed the information in the public domain when it made the plea agreement publicly available on PACER.  The remedy is not to punish the public and the press by issuing a prior restraint order seeking to "lock the barn door after the horse is gone."  Hurvitz v. Hoefflin, 84 Cal. App. 4th 1232, 1245 (2000).

Although this Court has set a hearing for July 18, it does not change the constitutional analysis that warrants vacating the unconstitutional prior restraint immediately; as the United States Supreme Court has made clear, a prior restraint that exists even for a short period of time nonetheless is a violation of the First Amendment that causes irreparable harm.  In Nebraska Press, for example, the United States Supreme Court rejected the claim that a restraining order was acceptable because it only "delayed" the dissemination of information.  "[T]he element of time is not unimportant if press coverage is to fulfill its traditional function of bringing news to the public promptly."  427 U.S. at 560-61.  The Ninth Circuit similarly explained in CBS, Inc. v. United States Dist. Court, 729 F.2d 1174 (9th Cir. 1983), that "[t]he first amendment informs us that the damage resulting from a prior restraint – even a prior restraint of the shortest duration – is extraordinarily grave."  Id.  See also Goldblum v. NBC, 584 F.2d 904, 906-07 (9th Cir. 1978) (granting emergency mandamus relief to vacate prior restraint). See also Associated Press, 705 F.2d at 1147 (even a 48-hour delay in the release of court records was improper because it "is a total restraint on the public's first amendment right of access even though the restraint is limited in time"); Garcia v. Google, Inc., 786 F.3d at 40 (en banc 9th Circuit decision) (order requiring Google to take down film from websites was unconstitutional prior restraint); New York Times, 403 U.S. at, 714-15 (Black, J., concurring) ("every moment's continuance" of a

OPPOS. TO RESTRAINING ORDER
4836-2340-9517v.2 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

wrongful restraint on speech "amounts to a flagrant, indefensible, and continuing violation of the First Amendment").

Because no countervailing interest justifies the district court's order requiring The Times to take down its published article, or restraining it from publishing information from a lawfully-obtained court record, a stay of the order should be issued immediately.[9]

## II.   THIS COURT SHOULD VACATE ITS ORDER BECAUSE IT IS AN UNCONSTITUTIONAL PRIOR RESTRAINT ON SPEECH.

It is well established that a "heavy presumption" exists against the "constitutional validity" of prior restraints.  Organization for a Better Austin v. Keefe, 402 U.S. 415, 419 (1971).  As discussed above, and in the following sections, Defendant has not come close to meeting his burden of overcoming that presumption.

### A.   Prior Restraints Are Presumptively Unconstitutional.

The United States Supreme Court has cautioned that "[o]ur liberty depends

---

[9] The Times is suffering immediate, irreparable harm to its First Amendment interests every day that it is bound by the district court's unconstitutional orders.  It is for this reason that the Supreme Court has directed courts to resolve challenges to the validity of a prior restraint on an expedited basis.  See Freedman v. Maryland, 380 U.S. 51, 59 (1965) (holding that determination of validity of prior restraint "must be limited to the shortest fixed period compatible with sound judicial resolution"); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70 (1963) (prior restraint must be "assured an almost immediate determination of the validity of the restraint"); see also Elrod v. Burns, 427 U.S. 347, 373 (1976) ("[t]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury"); Steiner v. Superior Court, 220 Cal. App. 4th 1479, 1482 (2013) (order requiring attorney to remove pages from her website during trial was "unlawful prior restraint on the attorney's free speech rights").  Given that the order was issued without notice and an opportunity for The Times to be heard, however, this Court can and should vacate it immediately, without waiting for further briefing or the hearing scheduled for July 18.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

on the freedom of the press, and that cannot be limited without being lost." <u>Nebraska Press</u>, 427 U.S. at 548 (quoting 9 Papers of Thomas Jefferson 239 (J. Boyd ed. 1943)).  Thus, "[r]egardless of how beneficent-sounding the purposes of controlling the press might be," the Court has "remain[ed] intensely skeptical about those measures that would allow government to insinuate itself into the editorial rooms of this Nation's press." <u>Id.</u> at 560-561 (citation omitted).  The Court's unyielding hostility toward prior restraints is the most important manifestation of that skepticism.

At its core, the prior restraint doctrine expresses a constitutional aversion to government censorship of the press.  The Supreme Court has explained that prior restraints against speech must be held to a stricter standard than even post-publication criminal penalties:

> [A] free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand.  It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable.

<u>Southeastern Promotions v. Conrad</u>, 420 U.S. 546, 559 (1975).

When the government, including the judiciary, censors the press, it harms the "main purpose" of the First Amendment, which is "to prevent all such previous restraints upon publications as [have] been practiced by other governments." <u>Nebraska Press</u>, 427 U.S. at 557.  It is widely agreed that "[t]here is, indeed, something peculiarly totalitarian about government systems of prior restraint." R. Smolla, Smolla & Nimmer on Freedom of Speech § 15:10 (2004).  The Supreme Court has "learned … from what we view as the unhappy experiences of other nations where government has been allowed to meddle in the internal editorial affairs of newspapers." <u>Nebraska Press</u>, 427 U.S. at 560.  This core principle is critical here; "the history and language of the First Amendment support the view that the press must be left free to publish news, whatever the source, without censorship,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

injunctions, or prior restraints." <u>New York Times</u>, 403 U.S. at 717 (Black, J., concurring).

The Supreme Court's modern prior restraint jurisprudence dates to 1931, when the Court vacated a prior restraint against an anti-Semitic newspaper that disturbed the "public peace" and provoked "assaults and the commission of crime." <u>Near</u>, 283 U.S. at 716. After discussing the framers' hostility toward prior restraints, Chief Justice Hughes suggested that such orders might be granted only in "exceptional" circumstances, such as to block the publication of information about the movement of soldiers or the sailing dates of troop ships during wartime. <u>Id.</u> Forty years later, in <u>New York Times</u>, the Supreme Court reaffirmed the high constitutional barrier against prior restraints. 403 U.S. at 714. There, the Court unanimously rejected the government's request for an order barring two newspapers from publishing information that the government alleged was stolen from the Department of Defense and contained highly sensitive national security information about the Vietnam War. <u>Id.</u>

Similarly, in <u>CBS</u>, 510 U.S. at 1316-1317 (Blackmun, J., in chambers), the Supreme Court granted an emergency stay of the trial court's preliminary injunction that barred CBS from broadcasting a news report on unsanitary conditions at a beef processor, even though CBS was a defendant in a civil lawsuit based on the report. Justice Blackmun expressly rejected the argument that the First Amendment prior restraint doctrine was inapplicable because CBS allegedly obtained a videotape of the plant "through calculated misdeeds." <u>Id.</u> at 1316. He noted that "the gagging of publication has been considered acceptable only in exceptional cases," and processor's speculative claims of harm did not meet the burden for imposing "this most extraordinary remedy." <u>Id.</u> at 1317-1318.

The Ninth Circuit also consistently has rejected prior restraints, even where proponents tried to justify them by raising other important constitutional rights. In <u>Goldblum</u>, the Court issued emergency mandamus relief vacating an order that

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

barred NBC from broadcasting a film until it was submitted to the district court for pre-broadcast review, despite concerns raised about a criminal defendant's right to a fair trial.  584 F.2d at 906-07.  The Court of Appeal held that such concerns could not overcome the presumption against prior restraints, emphasizing that "[i]t is a fundamental principle of the first amendment that the press may not be required to justify or defend what it prints or says until after the expression has taken place."  Id. at 907.  A decade later, the Court similarly held in Hunt v. NBC, 872 F.2d 289 (9th Cir. 1989), that a district court properly denied a criminal defendant's request to enjoin NBC from broadcasting a film about the underlying events, which included re-enactments of the crime, before his trial.  Id. at 290.  See also Burch v. Barker, 861 F.2d 1149, 1155 (9th Cir. 1988) ("[p]rior restraints are permissible in only the rarest of circumstances, such as imminent threat to national security.").

These decisions demonstrate the extraordinarily high standard that the government must meet before it can prevent the press from publishing information that it lawfully obtains.  As one commentator has explained, the Court's decisions have "raised the presumptive level [of this standard] beyond realistic reach."  J. Mintz, "The Remains of Privacy's Disclosure Tort," 55 Md. L. Rev. 425, 455 (1996).  This Court's order, which restrains The Times from publishing information that it legally acquired from publicly-available court files, on PACER, does not meet that high standard.

**B.     The Press And Public Have A First Amendment Right To Publish Information Disclosed In Court Proceedings And Records.**

The Supreme Court consistently has rejected orders that attempt to prevent the press from publishing information about court proceedings.  Indeed, more than sixty years ago, the Court made clear that "[a] trial is a public event.  What transpires in the court room is public property."  Craig v. Harney, 331 U.S. 367, 374 (1947).  In language that is squarely on point here, the Craig Court noted that "[i]f a transcript of the court proceedings had been published, we suppose none would claim that the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

judge could punish the publisher for contempt. … <u>Those who see and hear what transpired can report it with impunity</u>." <u>Id.</u> (emphasis added).  "There is no special perquisite of the judiciary which enables it … to suppress, edit, or censor events which transpire in proceedings before it." <u>Id.</u>  The California Supreme Court similarly held more than a century ago that "it is a first principle that the people have the right to know what is done in their courts." <u>In re Shortridge</u>, 99 Cal. 526, 530-531 (1893).

In one of its first modern decisions addressing this issue, the United States Supreme Court nullified a Georgia statute that prohibited the disclosure of rape victims' names, finding in favor of a television station that had identified a victim whose name was disclosed in public court records.  <u>Cox Broadcasting</u>, 420 U.S. at 496.  The issue there, as defined by the Court, was "whether the State may impose sanctions on the accurate publication of the name of a rape victim obtained from public records – more specifically, from judicial records which are maintained in connection with a public prosecution and which themselves are open to public inspection." <u>Id.</u> at 491.  The Court concluded:  "We are convinced that the State may not do so." <u>Id.</u>  After discussing the importance of the press in a free society – and its key role in reporting on the courts – the Court declared that "[w]e are reluctant to embark on a course that would make public records generally available to the media but forbid their publication[.]" <u>Id.</u> at 496.  The Court explained:

> At the very least, the First and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information released to the public in official court records.  If there are privacy interests to be protected in judicial proceedings, the States must respond by means which avoid public documentation or other exposure of private information.  Their political institutions must weigh the interests in privacy with the interests of the public to know and of the press to publish.  <u>Once true information is disclosed in public court documents open to public inspection, the press cannot be sanctioned for publishing it</u>.

<u>Id.</u> at 496 (emphasis added).

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

A few years later, the Court rejected an order restraining the press from publishing information that had been released in open court. <u>Nebraska Press Ass'n</u>, 427 U.S. 539. There, shortly after the case was filed, the court entered an order that "prohibited everyone in attendance from 'releas[ing] or authoriz[ing] the release for public dissemination in any form or manner whatsoever any testimony given or evidence adduced." <u>Id.</u> at 542. The "preliminary hearing was held the same day, open to the public but subject to the order." <u>Id.</u> at 543. The press filed a motion challenging the order and the court entered a different order restraining them from publishing five categories of information. <u>Id.</u> at 543. On review, the state supreme court further narrowed the order, prohibiting the press from reporting on any confession in the case, or "other facts 'strongly implicative' of the accused." <u>Id.</u> at 545. The Supreme Court reversed the prior restraint, holding:

> To the extent that this order prohibited the reporting of evidence adduced at the open preliminary hearing, it plainly violated settled principles: "[T]here is nothing that proscribes the press from reporting events that transpire in the courtroom." <u>Sheppard v. Maxwell</u>, 384 U.S. at 362-363. ... <u>[O]nce a public hearing had been held, what transpired there could not be subject to prior restraint</u>.

<u>Id.</u> at 568 (emphasis added).

Similarly, in <u>Landmark Communications</u>, the Supreme Court invalidated a newspaper's conviction for publishing information from confidential judicial disciplinary proceedings in violation of a criminal statute. 435 U.S. at 831-832 (1978). The Court was asked to decide whether "the publication of truthful information withheld by law from the public domain is … privileged [by the First Amendment]." <u>Id.</u> at 840. Setting aside the issue of how the newspaper obtained the information, the Court held that the First Amendment protected its publication. <u>Id.</u> at 839. In his concurrence, Justice Stewart explained that the "government cannot take it upon itself to decide what a newspaper may and may not publish," and even where the government may deny access to information, "<u>government may not prohibit or</u>

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1    punish the publication of that information once it falls into the hands of the press,

2    unless the need for secrecy is manifestly overwhelming." Id. at 849 (Stewart, J.,

3    concurring) (emphasis added).

4         Subsequently, in Oklahoma Publishing, the Supreme Court struck down a prior

5    restraint in a murder case involving an eleven-year-old defendant. 430 U.S. at 308-

6    309.  After reporters learned the defendant's name, which was mentioned in open

7    court during a detention hearing, and after photographers took pictures of the

8    defendant leaving the courthouse, the trial court issued an order barring the media

9    from disseminating the juvenile's name or photograph. Id. at 308-309.  Noting that

10   there was no evidence that the press had learned the defendant's name or obtained his

11   photograph "unlawfully," the Court invalidated the trial court's order as a prior

12   restraint that "abridge[d] the freedom of the press in violation of the First and

13   Fourteenth Amendments." Id. at 311-12. See also Smith v. Daily Mail Publ'g Co.,

14   443 U.S. 97, 104 (1979) (invalidating West Virginia statute prohibiting the media

15   from publishing the identity of a juvenile defendant; "if a newspaper lawfully obtains

16   truthful information about a matter of public significance then state officials may not

17   constitutionally punish publication of the information," barring an extraordinary

18   countervailing state interest).

19        Even sensitive information that implicates legitimate privacy concerns and

20   alleged safety of a rape victim could not justify a prior restraint.  In Florida Star, the

21   Supreme Court invalidated a state law that prohibited the dissemination of the names

22   of rape victims, declaring that the government cannot proscribe the publication of

23   "lawfully obtain[ed] truthful information about a matter of public significance." 491

24   U.S. at 533.  The Court held that the only exception to this rule was where such a

25   prohibition was necessary "to further a state interest of the highest order." Id. at 537.

26   In Florida Star, however, the Court concluded that not even the state's desire to

27   protect a rape victim's privacy, or claims that victims might be exposed to safety

28   concerns, met this stringent standard. Id. at 537-538.

OPPOS. TO RESTRAINING ORDER
4836-2340-9517v.2 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

The California Court of Appeal's decision in <u>Sun Co. of San Bernardino v. Superior Court</u>, 29 Cal. App. 3d 815 (1973) is instructive.  In that case, the trial court issued an order prohibiting the media from publishing the names and photographs of anticipated trial witnesses – inmates who witnessed a prison killing – based on the prosecution's claim that publication could present a danger of intimidation, including serious injury or even death, to the prospective witnesses.  In finding the prior restraint to be unconstitutional, the appeals court noted the speculative nature of the alleged threat, and the availability of other means to protect the witnesses:

> <u>First Amendment rights may not be "sacrificed" on the basis of a possibility …
> that some evil might occur if the utterance is published</u>. … [T]he fears of the
> prosecutor and the correctional officer that the inmates would refuse to testify
> may be characterized only as pure speculation ….
>
> Nor can the order be sustained on the second prong:  the intimidation theory.
> In the first place, the witnesses' identities were no secret; if they were
> eyewitnesses to the crime of which the defendants stood accused – as claimed
> by the prosecutor – then [defendants] had presumably been aware of their
> identities since the stabbing; secondly, their names were made known to the
> defense in the course of pretrial discovery …; and finally, the subject
> witnesses obviously had to take the stand during the prosecution's case (and
> identify themselves) in the presence of the defendants – the very men, or their
> confederates, from whom retribution, if any, would be expected.
>
> Further militating against the intimidation theory was the fact that these nine
> witnesses had already been placed in protective custody for reasons entirely
> unrelated to the Castillo killing.  … [T]hese nine men were already high-
> security risks in the sense that they were subject to existing danger from the
> remaining prison population.

29 Cal. App.3d at 830 (emphasis added).

If interests such as protecting the privacy and security of rape victims (<u>Florida Star</u> and <u>Cox</u>), the protection of juveniles accused of serious crimes (<u>Smith</u> and <u>Oklahoma Publishing</u>), the fair trial rights of a defendant (<u>Nebraska Press</u>), or the alleged threat to potential witnesses (<u>Sun Co.</u>) are insufficient to justify a prior restraint, then the entirely speculative concerns raised by Defendant's counsel, which

OPPOS. TO RESTRAINING ORDER
4836-2340-9517v.2 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

presumably prompted the district court to issue its July 14 prior restraint order, clearly cannot do so.

## C.   Defendant Cannot Satisfy The Stringent Standard Required To Justify A Prior Restraint.

As indicated above, the burden of justifying a prior restraint is squarely on the party seeking it; there is a "heavy presumption" against the "constitutional validity" of such orders. Organization for a Better Austin, 402 U.S. at 419. Consequently, a court should not issue even a temporary prior restraint unless the restriction is necessary "to further a state interest of the highest order," Smith, 443 U.S. at 102, and the publication "threaten[s] an interest more fundamental than the First Amendment itself." Proctor & Gamble v. Bankers Trust Co., 78 F.3d 219 , 227 (6th Cir. 1996).[10] This is an extremely strict standard. The court must find evidence of a "clear and present danger" of harm to a paramount state interest; "speculati[on]" or "factors unknown and unknowable" never will justify a prior restraint. Nebraska Press, 427 U.S. at 563; see also Freedom Communications, Inc. v. Superior Court, 167 Cal. App. 4th 150, 153 (2008). Thus, "[i]t is not enough for a court to decide that the fair trial may be affected by the exercise of free speech." Hurvitz, 84 Cal. App. 4th at 1241. Instead, the proponent of the restraint bears "the burden of producing evidence to establish the prejudice." Id. (Emphasis added.) See also Burch v. Barker, 861 F.2d 1149, 1155 (9th Cir. 1988) ("[p]rior restraints are permissible in only the rarest of circumstances, such as imminent threat to national security").[11]

---

[10] In Proctor & Gamble., a district court enjoined a magazine from publishing information from sealed court records, which an attorney had inadvertently provided to a reporter. 78 F.3d at 223. The Sixth Circuit reversed, criticizing the district court for not "realiz[ing] that it was engaging in a practice that, under all but the most exceptional circumstances, violates the Constitution." Id. at 225.

[11] Even in the national security context, history has shown that court-ordered restraints on speech are not just constitutionally disfavored but are often ineffective

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Here, The Times has not been given any information about the justification for this Court's order; it was not served with Defendant's ex parte application (and the order holds that The Times may not receive a copy of the Application), and there is no explanation or findings in the order itself providing any rationale for the extraordinary violation of The Times' rights.

Presumably, Defendant made the same claim to this Court that his counsel made to The Times – that he and his family would be at risk if the terms of the plea agreement were revealed publicly. But the United States Supreme Court repeatedly has rejected the notion that speculative harms like this can justify a prior restraint; even such claims involving national security were deemed inadequate to justify a restraining order. See Sections 1.A-B, supra; see also New York Times, 403 U.S. 718 (rejecting attempt to justify prior restraint by alleging purported harm to national security); CBS, 510 U.S. at 1317 (prior restraint can be justified, if at all, "only where the evil that would result from the reportage is both great and certain and cannot be militated by less intrusive measures"); Sun Co., 29 Cal. App.3d at 830

---

at preventing the harm being alleged. In perhaps the most famous case in which a prior restraint was actually issued, United States v. The Progressive, Inc., 467 F. Supp. 990 (W.D. Wis. 1979), where a magazine was temporarily enjoined from publishing an article showing how a thermonuclear bomb works, the government abandoned the case while the trial court's ruling was on appeal after similar information was published elsewhere. See United States v. The Progressive, Inc., 610 F.2d 819 (7th Cir. 1979). As one of the Department of Justice attorneys who prosecuted the matter observed years later – in terms that are particularly relevant to this case – "whatever the challenges may have been of keeping any information truly 'secret' twenty-five years ago, the notion of keeping anything secret once it has been disclosed in any context is virtually impossible in today's internet world." "Symposium: Weapons of Mass Destruction, National Security, and a Free Press: Seminal Issues as Viewed through the Lens of the Progressive Case," 26 Cardozo L. Rev. 1337, 1358 (2004-2005) (comments of Robert E. Cattanach).

OPPOS. TO RESTRAINING ORDER
4836-2340-9517v.2 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

(rejecting speculative claims about safety of witnesses and noting alternative means of securing their safety).[12]

Neither Defendant nor this Court's order identify <u>anything</u> in the article published by The Times on July 14 (which this Court demanded be removed) that would increase the alleged "risk" to Defendant, or prevent the government from securing his safety as a witness.  Under these circumstances, Defendant has not met and cannot meet the exceedingly high bar courts have set to justify prior restraints.  See <u>CBS</u>, 510 U.S. at 1317.

Notably, courts in other cases have rejected prior restraints, even in the face of claims that the disclosure of the information might cause grave harm – including harm to national security.  <u>E.g.</u>, <u>New York Times Co. v. United States</u>, 403 U.S. 713, 726 (1971) (injunction against publication of classified documents purloined from Defense Department is a prior restraint).  Likewise, courts have denied requests for prior restraints even when competing constitutional rights are at stake.  See, <u>e.g.</u>, <u>United States v. McKenzie</u>, 735 F.2d 907, 910 (5th Cir. 1984) (describing prior proceedings in which an order enjoining CBS from airing a segment of "60 Minutes" involving an ongoing criminal case was stayed as an unconstitutional prior restraint); <u>United States v. Salameh</u>, 992 F.2d 445, 446 (2d Cir. 1993) ("[a] prior restraint on constitutionally protected expression, even one that is intended to protect a defendant's Sixth Amendment right to trial before an impartial jury, normally carries a heavy presumption against its constitutional validity.");  <u>Menendez v. Fox</u>

_____

[12] In cases arising under California's Public Records Act, courts consistently have rejected the same kind of speculative allegations of possible harm from disclosure of information about police officers.  <u>California Comm'n on Peace Officers Standards & Training v. Superior Court</u>, 42 Cal. 4th 278, 302 (2007) ("<u>POST</u>").  <u>Accord</u> <u>Long Beach Police Officers Ass'n v. City of Long Beach</u>, 59 Cal. 4th 59, 75 (2014) ("<u>LBPOA</u>") (evidence of threats to police and warnings of "potential retaliation/threats" too "vague" and speculative to justify withholding names of officers involved in shootings).

OPPOS. TO RESTRAINING ORDER
4836-2340-9517v.2 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Broadcasting, 22 Med. L. Rep. 1702, 1703 (C.D. Cal. April 19, 1994) (denying request to enjoin docudrama about highly-publicized murders while retrial of defendants was pending); In re Providence Journal Co., 820 F.2d 1342, 1345 (1st Cir. 1986) (reversing "temporary restraining order barring publication of [FBI] logs and memoranda" to protect surveilled citizen's Fourth Amendment rights, emphasizing that even a temporary restraint on pure speech is improper "absent the most compelling circumstances"), modified on reh'g en banc, 820 F.2d 1354 (1st Cir. 1987), cert. dismissed on other grounds, United States v. Providence Journal Co., 485 U.S. 693 (1988)

Furthermore, as discussed above, the strict requirements are even greater where, as here, a mandatory injunction is involved – namely, the portion of this Court's order requiring The Times to "remove[] and delete[]" an article that already had been published on its website. See Section I, supra; Garcia, 786 F.3d at 740. Defendant has not identified, and cannot identify anything in the published article that even remotely raises the possibility of harm to Defendant or his family, let alone satisfy the strict constitutional burdens for mandatory injunctions. The order, which apparently was prepared by Defendant's counsel, did not even apply the requisite test for such injunctions.

Moreover, Defendant's proposed order, which this Court appears to have adopted, does not provide any justification for broadly restraining The Times from publishing information about the Defendant's plea agreement. As the Supreme Court's decisions consistently have recognized, speculative claims about purported "harm" that might result from disclosure does not justify the extraordinary action of a restraining order on the press.

## D.    Courts Uniformly Reject Prior Restraints Where, As Here, The Information Already Was Available To The Public.

Prior restraints are particularly inappropriate where, as here, the information sought to be suppressed already has been made available to the public. In Hurvitz,

for example, the California Court of Appeal explained why an order restraining publication of already public information is "unconstitutional" – "once the information is released, unlike a physical object, it cannot be recaptured and sealed." 84 Cal. App. 4th at 1245.  See also United States v. Smith, 123 F. 3d 140, 154 n.16, 155 n.17 (3d Cir. 1997) ("under prior restraint law, orders prohibiting the media from publishing information already in its possession [and publicly known] are strongly disfavored"); Sun Co., 29 Cal. App. 3d at 829-830 (reversing order restraining disclosure of information from criminal trial; noting information about identity of witnesses would have been known to criminal defendants who allegedly posed threat.); Bank Julius Baer & Co. v. Wikileaks, 535 F. Supp. 2d 980, 985 (N.D. Cal. 2008) (where "there is evidence in the record that 'the cat is out of the bag' … the issuance of an injunction would therefore be ineffective.").[13]

---

[13] See also Las Vegas Review-Journal v. Eighth Judicial District Court, 412 P.3d 23, 27 (Nev. 2018) (reversing prior restraint order issued against news organization; "[m]andatory Supreme Court precedent teaches … that where the press obtains private information from the state – even where the state should have protected the information – damages or criminal punishment may not be imposed for its subsequent publication absent extraordinary circumstances"); Kansas v. Alston, 256 Kan. 571, 581-584, 887 P.2d 681 (1994) (reversing a newspaper's contempt conviction for violating a trial court's order not to publish information discussed in open court); Cooper v. Rockford Newspapers, Inc., 34 Ill. App. 3d 645, 646-648, 652, 339 N.E.2d 477 (1975) (reversing trial court that barred newspaper from writing editorials about lawsuit in which it was a party, on grounds that order was an unconstitutional prior restraint on the defendant's First Amendment rights); see also State ex rel. Superior Court v. Sperry, 79 Wn. 2d 69, 483 P.2d 608 (1971) (reversing trial court order in criminal proceeding prohibiting the media from publishing information revealed outside of the presence of the jury; "[t]he judiciary cannot under circumstances like those before us, suppress, edit, or censor from the public those events which occur in open court proceedings"); State v. Coe, 101 Wn. 2d 364, 366, 381, 679 P.2d 353 (1984) (court order prohibiting television station from airing tape recordings of a criminal defendant's meetings and telephone calls with an undercover police officer that had been admitted into evidence was unconstitutional, notwithstanding the defendant's  evidence that she would suffer psychiatric harm if the tapes were broadcast).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

The Fourth Circuit's decision in <u>In re Charlotte Observer</u>, is instructive. There, the district court enjoined two reporters from publishing the name of the target of an ongoing grand jury investigation after it was inadvertently disclosed in open court in violation of confidentiality laws.  882 F.2d at 49-50.   But the Court of Appeals vacated the injunction as an impermissible prior restraint.  Noting that the "the cat [was] out of the bag," the appellate court held that "[o]nce announced to the world, the information lost its secret characteristic, an aspect that could not be restored by the issuance of an injunction."  <u>Id.</u> at 50; <u>accord</u> <u>United States v. Smith</u>, 123 F. 3d 140, 154 n.16, 155 n.17 (3d Cir. 1997) ("under prior restraint law, orders prohibiting the media from publishing information already in its possession [and publicly known] are strongly disfavored") (citing <u>In re Charlotte Observer</u> with approval); <u>Sun Co. of San Bernardino v. Superior Court</u>, 29 Cal. App. 3d 815 (1973) (rejecting restraining order preventing press from identifying witnesses given that criminal defendants already knew witnesses' identities).

Likewise, once the court made the plea agreement publicly available on PACER, inadvertently or not, and certainly once The Times published information from the plea agreement, "the information lost its secret characteristic, an aspect that could not be restored by the issuance of" any order restricting the dissemination of the contents of that public court record.  <u>Id.</u>  No justification exists for continuing this unconstitutional restraint on The Times' First Amendment rights.

## III.  CONCLUSION

Over the last 75 years, the United States Supreme Court repeatedly has struck down prior restraints that limited the press' right to report about court proceedings. The Court has made clear that a prior restraint may be contemplated only in the rarest circumstances, such as where necessary to prevent the dissemination of information about troop movements during wartime, <u>Near</u>, 283 U.S. at 716, or to "suppress[] information that would set in motion a nuclear holocaust."  <u>New York Times</u>, 403 U.S. at 726 (Brennan, J., concurring).

OPPOS. TO RESTRAINING ORDER
4836-2340-9517v.2 0050033-000508

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

The Ninth Circuit similarly has held repeatedly that prior restraints on the press – including restraints on publication of information implicating on-going court proceedings – are unconstitutional.  See, e.g., CBS, 729 F.2d at 1176-77; Goldblum, 584 F.2d at 906-07; Hunt, 872 F.2d at 290.  This case does not come close to presenting such extraordinary circumstances.

As the United States Supreme Court has recognized, restraining the publication of information by the media undermines the "main purpose" of the First Amendment, which is "to prevent all such previous restraints upon publications as [have] been practiced by other governments." Nebraska Press Ass'n, 427 U.S. at 557 (quoting Patterson v. Colorado, 205 U.S. 454, 462 (1907)).  See also Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 774 (1986) (noting the "the public's interest in an uninhibited press" (quoting Time, Inc. v. Firestone, 424 U.S. 448, 456 (1976)).

The subject matter of The Times' reporting – the prosecution of a corrupt police officer – plainly is a matter of deep public concern, and The Times' coverage of truthful, lawfully obtained information furthers the public interest in receiving information on this topic.  See Landmark Communications, 435 U.S. at 839 ("[a] responsible press has always been regarded as the handmaiden of effective judicial administration ….  Its function in this regard is documented by an impressive record of service over several centuries. The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism." (quoting  Sheppard v. Maxwell, 384 U.S. 333, 350 (1966)).

////
////
////
////

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

OPPOS. TO RESTRAINING ORDER
4836-2340-9517v.2 0050033-000508

For all these reasons, The Times respectfully requests that this Court immediately vacate its July 14 order, in its entirety.

Dated:  July 16, 2018.

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
BRENDAN CHARNEY

LOS ANGELES TIMES
COMMUNICATIONS LLC
JEFF GLASSER

By */s/ Kelli L. Sager*
Kelli L. Sager

Attorneys for LOS ANGELES TIMES
COMMUNICATIONS LLC

OPPOS. TO RESTRAINING ORDER
4836-2340-9517v.2 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# DECLARATION OF
# ALENE TCHEKMEDYIAN

I, Alene Tchekmedyian, hereby declare:

1.      I am a reporter for the Los Angeles Times. The information contained in this declaration is true of my own personal knowledge, except for matters stated on informationand belief, which I am informed and believe to be true.

2.      In my capacity as a reporter for The Times, I have been covering the criminal case involving defendant John S. Balian in the U.S. District Court for the Central District of California, the Honorable John F. Walter presiding, Case No. CR 18-345.

3.      On Friday, July 13, 2018, I logged into the PACER system of the U.S. District Court for the Central District of California, and viewed the docket for the criminal case. I noticed that Defendant Balian pleaded guilty to the charges. I read the minutes of the change of plea hearing, which stated that a plea agreement was filed. I also noticed that the plea agreement was available, and downloaded a copy.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed on July 15, 2018, at Los Angeles, California.

_____
Alene Tchekmedyian

2

# DECLARATION OF JACK LEONARD

I, Jack Leonard, hereby declare:

1.      I am an assistant city editor for the Los Angeles Times, assigned to the Metro section.  The information contained in this declaration is true of my own personal knowledge, except for those matters stated on information and belief, which I am informed and believe to be true.

1.      The Times has been reporting on the arrest and prosecution of Defendant John S. Balian, which is the subject of a criminal case in the U.S. District Court for the Central District of California, the Honorable John F. Walter presiding, Case No. CR 18-345.  Attached as **Exhibit A** are true and correct copies of articles published by the Los Angeles Times on May 15, 2018 and June 11, 2018 concerning the criminal case against Defendant Balian.

2.      I am informed and believe that on Saturday, July 14, 2018 at approximately 10:55 a.m., the Los Angeles Times published on its website an article that discussed the terms of Defendant Balian's written plea agreement, which had been obtained from PACER by Times reporter Alene Tchekmedyian.  A true and correct copy of this article is attached as **Exhibit B**.  I understand that this article was taken down from The Times' website after receiving notice of a court order requiring The Times to take down the article.

3.      On July 14, 2018, I logged into the PACER system of the U.S. District Court for the Central District of California and viewed the criminal minutes for the hearing held on July 12, 2018 in the case against Defendant Balian.

2

minutes for the hearing held on July 12, 2018 in the case against Defendant Balian. These minutes refer to a plea agreement by Defendant Balian. Attached as **Exhibit C** is a true and correct copy of these criminal minutes. I accessed these minutes at approximately 6:00 PM Pacific Standard Time, i.e., after the U.S. District Court for the Central District of California issued its order restraining The Times from publishing information about the plea agreement.

4.      I am informed and believe that on Saturday, July 14 – after taking down the article attached as Exhibit B – the Los Angeles Times published an article that removed the information concerning the terms of the plea agreement, which was the subject of the district court's restraining order. A true and correct copy of this article, which is currently on The Times' website, is attached as **Exhibit D**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed on July 15, 2018, at Los Angeles, California.

Jack Leonard

3

# DECLARATION OF KELLI SAGER

I, Kelli L. Sager, hereby declare:

1.    I am a partner at Davis Wright Tremaine LLP, and I am lead counsel representing Petitioner Los Angeles Times Communications LLC in this matter. The information contained in this declaration is true of my own personal knowledge, except for matters stated on information and belief, which I am informed and believe to be true.

2.    I am informed and believe that on Saturday, July 14, 2018, Craig Missakian, counsel for John Sado Balian, a defendant in the criminal case pending in the U.S. District Court for the Central District of California, Case No. CR 18-345 sent an email to various individuals at Los Angeles Times Communications LLC ("The Times"), demanding that The Times refrain from publishing information concerning the contents of a plea agreement enteredinto by Mr. Balian, which a reporter for The Times had obtained from PACER.  A true and correct copy of Mr. Missakian's email is attached as **Exhibit E**.

3.    That same morning, Saturday, July 14, 2018, I responded to Mr. Missakian's email, explaining why there was no legal basis for his demand, and informing Mr. Missakian that The Times already had published an article referring to Mr. Balian's plea agreement.  A true and correct copy of my email to Mr. Missakian is attached as **Exhibit F**.

4.    Later that afternoon, at 12:28 PM Pacific Standard Time, Mr.

2

Missakian responded to my email, and attached a copy of an Order apparently signed by Judge John F. Walter. The order mandated, among other things, that The Times take down any article it had published before the order was issued that contained information about Mr. Balian's plea agreement. A true and correct copy of Mr. Missakian's email to me is attached as **Exhibit G**. A true and correct copy of the Order that was attached to Mr. Missakian's email is attached as **Exhibit H**.

5.     On Sunday, July 15, 2018, at 9:39 a.m., I sent an email to Mr. Missakian and to Jeff Mitchell, the U.S. Attorney handling the case, giving them notice that The Times would be filing an emergency petition to the Ninth Circuit Court of Appeals and an emergency motion to stay the district court's order, pursuant to FRAP 27-3. A true and correct copy of my email is attached as **Exhibit I**. Mr. Mitchell responded that the United States does not have a position on The Times' Petition and Motion at this time. I did not receive a response from Mr. Missakian, but based on his prior communications, assume that he opposes the Petition and Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed on July 15, 2018, at Los Angeles, California.

Kelli L. Sage

4827-4909-3741v.1 0050033-000508

3

# EXHIBIT A

Case 2:18-cr-00345-JFW   Document 50   Filed 07/16/18   Page 40 of 82   Page ID #:236


Trump heads to Putin summit with no clear goal — and worries that he'll mak...  | Nancy Sinatra Sr., first wife and early muse of Frank Sinatra, dies at 101 |  Enough LeBron! Tru Angelenos roo Clippers, not t

L.A. NOW    LOCAL

# Glendale cop tied to Mexican Mafia and Armenian organized crime, federal officials say

By **ALENE TCHEKMEDYIAN** and **RICHARD WINTON**
MAY 15, 2018   |   10:00 PM

  



John Saro Balian, shown in 2006, after he became a spokesman for the Glendale Police Department. (Times Community News)

 

As far back as 2015, a Glendale narcotics detective used burner phones to tip off gangsters about upcoming raids, once allowing a top target of federal law enforcement to elude arrest for a month, authorities said Tuesday.

John Saro Balian is also suspected of collaborating with other criminals to steal cars, presumably to sell abroad, and taking money to hunt someone down.

When confronted by federal agents in four interviews over the last year, authorities say Balian, 45, lied about his ties to the Mexican Mafia and Armenian organized crime in Southern California.

"I'm not [expletive] on anybody's payroll," he told the Los Angeles Police Department and FBI in one interview.

Now, the veteran officer who once served as the spokesman for the Glendale Police Department is facing up to five years in federal prison. Prosecutors this week charged Balian with one count of making false statements to federal investigators, according to a criminal complaint filed in U.S. District Court.

"Mr. Balian moved in criminal circles and operated as though he was above the law by repeatedly lying to hide his criminal activity," Paul Delacourt, assistant director in charge of the FBI's Los Angeles field office, said in a statement. "His alleged actions impeded legitimate investigations into organized violent crime and consequently presented a threat to public safety."

It's unclear whether Balian has retained an attorney.

Balian was identified as a person of interest by the FBI's Eurasian Organized Crime Task Force, which in 2016 was probing ties between the Mexican Mafia and Armenian organized crime.

Since then, three confidential informants have described a series of troubling interactions with the detective — known to them as "Saro" — that are detailed in a

47-page affidavit supporting the complaint. In some cases, Balian appears to have instigated clashes between the two sides, according to court records. Investigators corroborated some of the informants' stories with cellphone records, police reports and interviews.



Former Chief Randy Adams, left, swears in lateral transfers, including John Balian in the center, in 2004. (Glendale Police Department)



In one incident, Balian allegedly offered an informant and a second man $100,000 to "scare" the bodyguard of an Armenian businessman in Commerce, a request that led to a shooting in July 2016.

After the encounter, the second man spoke with the informant.

"I think I hit him," he said, according to the filing. Later, he added, "I think I killed him."

The alleged shooter gave the gun to the informant, who said he gave the gun to Balian, according to the filing. It's unclear whether the bodyguard lived.

In one case, that same informant described a situation in which Balian offered a tip about a gang sweep, allowing a top target — a Frogtown gang member — to flee before agents arrived.

"Tell your boy Bouncer that he's the No. 1 on the list for tomorrow," Balian warned, according to the affidavit. It took agents another month to arrest the target.

The informant also said Balian gave him locations of marijuana grow and drug stash houses — information he was privy to as an officer — and told him to "hit them" before law enforcement could execute their search warrants, according to the court filing.

Balian also allegedly instructed him to "slap around" people to persuade them to pay money. Armenians would not respect or pay him, Balian told the informant, if they didn't fear him, the filing said.

Another informant met with Balian up to 15 times in 2015 and occasionally saw him wearing a badge and a gun. That person admitted to stealing more than a dozen high-value cars for Balian and his associate, the filing said. He said he'd leave the keys inside the car and park it on a designated street, where someone else would pick it up.

During a search of a third informant's home, investigators found handwritten notes in the trash referencing "Saro" and possible cocaine shipments from Mexico. It's unclear whether a transaction occurred and if Balian was involved.

Federal authorities Tuesday afternoon were searching Balian's Seal Beach home, an FBI spokeswoman said. They were looking for evidence of racketeering, interference with commerce by robbery or extortion, and bribery, according to the affidavit.

Investigators first interviewed Balian in April of last year. He told them he was an expert on the Mexican Mafia when he worked for the Montebello Police Department, so he used to "stay on top of all these guys."

Balian was one of five Armenian American officers who sued Glendale in 2010, alleging discrimination, retaliation and harassment. The city eventually agreed to

settle the case, paying $7,500 in Balian's attorney's fees, and depositing 250 hours of sick time and 50 hours of vacation time into his leave bank.

alene.tchekmedyian@latimes.com

**Twitter:** @AleneTchek

richard.winton@latimes.com

**Twitter:** @LAcrimes

**UPDATES:**

**10 p.m.:** This article was updated with more information from the affidavit.

**7 p.m.:** This article was updated with a statement from an FBI official.

*This article was originally published at 6:25 p.m.*



### Essential California Newsletter

Monday - Saturday

A roundup of the stories shaping California.

ENTER YOUR EMAIL ADDRESS                               ⟩

### Alene Tchekmedyian

Alene Tchekmedyian is a Metpro reporter covering breaking news in California. She previously covered Glendale and Burbank police for Times Community News. She received her master's in journalism from Columbia University after graduating from UCLA, where she worked at the student-run Daily Bruin. She currently serves on the UCLA Communications Board, which oversees the university's student-run media publications. She grew up in Huntington Beach.

### Richard Winton

Case 2:18-cr-00345-JFW   Document 50   Filed 07/16/18   Page 45 of 82   Page ID #:241

Richard Winton is a crime writer for the Los Angeles Times and part of the team that won the Pulitzer Prize for Public Service in 2011. Known as @lacrimes on Twitter, during 20 years at The Times he also has been part of the breaking news staff that won Pulitzers in 1998 and 2004. He won the ASNE Deadline News award in 2006. A native of England, after getting degrees from University of Kent at Canterbury and University of Wisconsin-Madison, he began covering politics but chose a life of crime because it was less dirty.

---

COMMENTS (32)

---

## LATEST NEWS

### Rhode Island governor to hold office hours at the beach

28m

---

### Dianne Feinstein hopes to stop Senate candidate endorsement in California

53m

---

### Woman berated for Puerto Rican flag shirt hopes her experience 'shines a light on what's going on with racism'

1h

---

## LATEST L.A. NOW

### Glendale police detective pleads guilty to obstruction, lying to feds about ties to organized crime

38m



---

### Firefighter killed while battling blaze near Yosemite National Park

1h



---

### Mexican citizen who stole government benefits for 37 years is sentenced to 37 months in federal prison

3h

25 injured as tour bus crashes on 10 Freeway in downtown Los Angeles

5h



Former San Diego-area Border Patrol agent pleads guilty to drug charge in federal court

10:25 AM



# Sign up for our newsletters

# Subscribe for unlimited access

| | |
|---|---|
| About us | Corrections |
| Contact us | Archives |
| Privacy policy | Classifieds |
| Terms | Find a job |
| Site map | Shop |
| E-Newspaper | Advertising |

    

Copyright © 2018, Los Angeles Times

# New charges against Glendale cop alleging ties to Mexican Mafia and Armenian organized crime signal possible plea deal

 **By ALENE TCHEKMEDYIAN**
JUN 11, 2018  |  8:00 PM

  



John Saro Balian, shown in 2006, after he became a spokesman for the Glendale Police Department. (Times Community News)

 

**Federal prosecutors have filed new charges against a Glendale narcotics detective**

suspected of maintaining ties with the Mexican Mafia and Armenian organized crime in a move that signals the two sides are negotiating a plea deal.

John Saro Balian, 45, now faces one count each of soliciting a bribe, obstructing justice by helping a gangster avoid arrest and making false statements to federal investigators about his relationships with criminals, according to a criminal information filing last week. He was <u>arrested last month</u> on just the latter charge.

The criminal information, a charging document that in a felony case typically indicates that a defendant has waived indictment and has agreed instead to plead guilty, comes after Balian requested time to negotiate a plea agreement, according to court records.

It's unclear if Balian is cooperating with prosecutors to build cases against others.

"Anything's possible," said Tracy Webb, a spokeswoman with the U.S. attorney's office.

Reached by phone Sunday, Balian's attorney Marc Nurik declined to comment

📰 TOPICS

LA Times Expeditions
Travel with a journalist

SEE TRIPS | LA Times Expeditions

schemes and witness intimidation, according to court records. The judge also noted that Balian, who lives in Seal Beach, has the means to flee and relatives in France. He is being held in protective custody.

Balian, a veteran officer and a former spokesman for the Glendale Police Department, was identified as a person of interest by the FBI's Eurasian Organized Crime Task Force, which was probing ties between the Mexican Mafia and Armenian organized crime.

During the investigation, three confidential informants told authorities about

troubling interactions with the detective. They are detailed in a 47-page affidavit by Homeland Security Investigations Special Agent Michael Hyland.

One of the informants is a St. Andrews (STA) gang member and an associate of the Mexican Mafia who in October spoke with the Los Angeles Police Department's elite Robbery-Homicide Division from jail, where he was awaiting trial on an extortion charge. In the affidavit, Hyland said the informant probably provided information in the hopes that it would help him with pending state and federal criminal cases.

In one case the informant described, Balian allegedly offered a tip about a gang sweep, allowing a top target — a Frogtown gang member — in a federal racketeering case to flee before agents arrived.

"Tell your boy Bouncer that he's the No. 1 on the list for tomorrow," Balian allegedly warned, according to the affidavit. It took agents another month to arrest the target.

The informant also alleged that Balian gave him locations of marijuana grow and drug stash houses — information he was privy to as an officer — and told him to "hit them" before law enforcement could execute their search warrants, according to the affidavit.

Balian also allegedly gave the informant names of people to extort and instructed him to "slap around" people to persuade them to pay money. He allegedly told the informant, who is Latino, that Armenians would not respect or pay him if they didn't fear him, the affidavit said.

The informant said he and Balian communicated using "burners," cellphones they used only with each other for no more than a month at a time. On one of the informant's phones, according to the filing, Balian's burner number was saved in the contacts as "Bro."

In another incident, Balian allegedly offered the informant and a second man $100,000 to "scare" someone in Commerce, a request that led to a July 2016 shooting of an Armenian businessman's bodyguard.

The informant said he was unable to participate but loaned the second man his car. After the encounter, when the man returned the car, they spoke.

"I think I hit him," the second man said, according to the filing. Later, he added, "I think I killed him."

The alleged shooter gave the gun to the informant, who said he gave the gun to Balian, according to the filing. It's unclear whether the bodyguard lived.

A second informant who said he had known Balian since middle school told authorities that someone broke into his office in February 2017 and stole a significant amount of property. The informant alleged that Balian agreed to track down the person responsible in exchange for $10,000, partly paid up front, according to the affidavit.

The first informant, the gangster who spoke to authorities from jail, told authorities that Balian told him to rob the man the second informant paid him to hunt down.

"Go hit him. He has all the [expletive]," he recalled Balian saying, according to the affidavit.

When confronted by federal agents in four interviews over the last year, Balian lied about his ties to the Mexican Mafia and Armenian organized crime in Southern California, authorities said.

"I'm not [expletive] on anybody's payroll," he told the LAPD and FBI in one interview when they asked about the second informant.

Balian was one of five Armenian American officers who sued Glendale in 2010, alleging discrimination, retaliation and harassment. The city eventually settled the case, paying $7,500 of Balian's attorney's fees, and depositing 250 hours of sick time and 50 hours of vacation time into his leave bank.

He joined the Glendale police force in 2004 after more than eight years with the Montebello Police Department. Sgt. Daniel Suttles, a Glendale police spokesman,

said Balian already was on leave without pay before his May 15 arrest, but would not elaborate except to cite privacy laws for medical information.

## Essential California Newsletter

Monday - Saturday

A roundup of the stories shaping California.

| ENTER YOUR EMAIL ADDRESS | > |

## Alene Tchekmedyian

Alene Tchekmedyian is a Metpro reporter covering breaking news in California. She previously covered Glendale and Burbank police for Times Community News. She received her master's in journalism from Columbia University after graduating from UCLA, where she worked at the student-run Daily Bruin. She currently serves on the UCLA Communications Board, which oversees the university's student-run media publications. She grew up in Huntington Beach.

COMMENTS (12)

**LATEST NEWS**

### Rhode Island governor to hold office hours at the beach

27m

### Dianne Feinstein hopes to stop Senate candidate endorsement in California

52m

### Woman berated for Puerto Rican flag shirt hopes her experience 'shines a light on what's going on with racism'

1h

## LATEST L.A. NOW

**Firefighter killed while battling blaze near Yosemite National Park**

1h



**Mexican citizen who stole government benefits for 37 years is sentenced to 37 months in federal prison**

2h

**Glendale police detective pleads guilty to obstruction, lying to feds about ties to organized crime**

5h



**25 injured as tour bus crashes on 10 Freeway in downtown Los Angeles**

5h



**Former San Diego-area Border Patrol agent pleads guilty to drug charge in federal court**

5h



# Sign up for our newsletters

# Subscribe for unlimited access

About us

Contact us

Privacy policy

Terms

Site map

E-Newspaper

Corrections

Archives

Classifieds

Find a job

Shop

Advertising

    

Copyright © 2018, Los Angeles Times

# EXHIBIT B



📰 TOPICS

LA Times Expeditions
Travel with a journalist

**SEE TRIPS** | LA Times Expeditions

◄

Nancy Sinatra Sr., first wife and early muse of Frank Sinatra, dies at 101



Trump heads to Putin summit with no clear goal — and worries that he'll mak...



Enough LeBron! Tru Angelenos roo Clippers, not t

›

# Glendale police detective pleads guilty to obstruction, lying to feds about ties to organized crime



**By ALENE TCHEKMEDYIAN**
JUL 14, 2018 | 3:50 PM

  



John Saro Balian, shown in 2006, after he became a spokesman for the Glendale Police Department. (Times Community News)

 

A Glendale police narcotics detective pleaded guilty this week to <u>charges</u> that he lied to federal investigators about his links to organized crime and tipped off the Mexican Mafia about an upcoming gang sweep, helping a top target avoid arrest, court records show.

John Saro Balian, 45, of Seal Beach pleaded guilty to one count each of soliciting a bribe, obstruction of justice and making false statements to federal investigators as part of a plea agreement he reached with prosecutors. The document was ordered to be filed under seal but appeared on PACER, a public online database for court documents.

˅

According to the agreement, filed in U.S. District Court, Balian agreed to cooperate with federal authorities in interviews and court proceedings. He is scheduled to be sentenced in September, when prosecutors are expected to recommend a reduced sentence.

˄

The charges to which he pleaded guilty carry a maximum sentence of 35 years in prison.

˅

Balian's attorney, Craig Missakian, declined to comment.

˄

A judge on Friday denied Balian's request to be released on bond. After his <u>May 15 arrest</u>, the judge had ordered he be permanently detained, calling him a flight risk and a danger because of his alleged participation in extortion schemes and witness intimidation, according to court records.

In the bond request this week, Balian argued that new facts should mitigate those concerns.

"These include the nature of the charges defendant faces and the relatively short length of the likely sentence, facts that address certain of the more serious allegations in the complaint affidavit, more information about defendant's past travel and ties to foreign countries, and additional potential surety and bond resources," Balian's application said.

Balian, a veteran officer and former spokesman for the Glendale Police Department, was identified as a person of interest by the FBI's Eurasian Organized Crime Task Force, which was probing ties between the Mexican Mafia and Armenian organized crime, including several murders, according to the plea agreement.

During the investigation, three confidential informants told authorities about troubling interactions with the detective, which were detailed in a 47-page affidavit.

According to the plea agreement, Balian accepted $2,000 to help locate someone believed to have broken into his associate's office and stolen $100,000 worth of property.

In March 2017, the agreement said, Balian gave information to the U.S. Marshals Services stationed at the Glendale Police Department, causing law enforcement resources to be used in an attempt to find the alleged thief.

In June 2015, Balian overheard Glendale police officers discussing a plan to search and arrest about 22 people in a federal racketeering case targeting the Frogtown gang, which is loyal to the Mexican Mafia, the agreement said.

Balian then tipped off his associates within the Mexican Mafia, saying authorities planned to arrest Jorge Grey, a Frogtown "shotcaller" who was a top target, the affidavit said.

"Tell your boy Bouncer that he's the No. 1 on the list for tomorrow," Balian allegedly warned, according to the affidavit.

Grey fled, and it took agents about a month to arrest him.

Balian "acted corruptly with the specific intent to subvert the due administration of justice for the purpose of enhancing his reputation with the Mexican Mafia," the plea agreement said.

During four interviews with authorities, the plea agreement said, Balian provided false and misleading information to conceal his relationships with the Mexican Mafia and Armenian organized crime.

Balian was one of five Armenian American officers who sued Glendale in 2010, alleging discrimination, retaliation and harassment. The city eventually settled the case.

Balian remains on unpaid leave with the Police Department.

In a statement this week, Glendale Police Chief Carl Povilaitis said Balian's actions "are not consistent with the values" of the department. "A felony conviction disqualifies an individual from being a peace officer in the state of California, and the Glendale Police Department is taking swift and appropriate action."

**3:40 p.m.:** This article was updated with a statement from the Glendale police chief.
*This article was originally published at 10:55 a.m.*

---



### Essential California Newsletter
Monday - Saturday

A roundup of the stories shaping California.

| ENTER YOUR EMAIL ADDRESS | > |

---



### Alene Tchekmedyian

Alene Tchekmedyian is a Metpro reporter covering breaking news in California. She previously covered Glendale and Burbank police for Times Community News. She received her master's in journalism from Columbia University after graduating from UCLA, where she worked at the student-run Daily Bruin. She currently serves on the UCLA Communications Board, which oversees the university's student-run media publications. She grew up in Huntington Beach.

COMMENTS (13)

---

## LATEST NEWS

Dianne Feinstein hopes to stop Senate candidate endorsement in California

33m



Woman berated for Puerto Rican flag shirt hopes her experience 'shines a light on what's going on with racism'

58m



---

## LATEST L.A. NOW

Firefighter killed while battling blaze near Yosemite National Park

1h



Mexican citizen who stole government benefits for 37 years is sentenced to 37 months in federal prison

2h

Glendale police detective pleads guilty to obstruction, lying to feds about ties to organized crime

5h



25 injured as tour bus crashes on 10 Freeway in downtown Los Angeles

5h



Former San Diego-area Border Patrol agent pleads guilty to drug charge in federal court

5h



# Sign up for our newsletters

# Subscribe for unlimited access



About us

Contact us

Privacy policy

Terms

Site map

E-Newspaper

Corrections

Archives

Classifieds

Find a job

Shop

Advertising

Copyright © 2018, Los Angeles Times

# EXHIBIT C

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CRIMINAL MINUTES -- GENERAL</u>

Case No.   **CR 18-345-JFW**                                          Dated: July 12, 2018
=====================================================================
PRESENT:   HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

| Shannon Reilly | Sheri Kleeger | Jeff P. Mitchell |
|---|---|---|
| Courtroom Deputy | Court Reporter | Asst. U.S. Attorney |
| | | present |

Interpreter: None

=====================================================================
U.S.A. vs (Dfts listed below)                     Attorneys for Defendants

1)    John Saro Balian                      1)    Craig Missakian
      present in custody                          present - retained

PROCEEDINGS:    **CHANGE OF PLEA AND SETTING OF SENTENCING DATE**

Case called, and counsel make their appearance.  Defendant is sworn.

Plea agreement filed under seal on July 11, 2018 is incorporated and made part of the proceeding.
Waiver of Indictment filed on June 28, 2018.

Defendant withdraws his previously entered pleas of not guilty and enters a plea of Guilty to
Counts 1, 2, and 3 of the Three-Count Information filed on June 5, 2018.

The Court questions the defendant regarding the pleas of Guilty and finds a factual and legal basis
for the pleas.  The Court finds that the defendant, John Saro Balian, has entered his pleas freely
and voluntarily with a full understanding of the charges against him and the consequences of his
pleas.  The Court finds that defendant understands his constitutional and statutory rights and
wishes to waive them.  Accordingly, the pleas are accepted and entered.

The Court refers the defendant to the Probation Office for the preparation of a pre-sentence report
and continues the matter to **September 24, 2018, at 8:30 am**, for sentencing.

Court orders reporter's transcript sealed until further order of this Court.

cc:     USPO, PSA

*Counsel are notified that Federal Rule of Criminal Procedure 32 requires the parties to notify the Probation
Officer, and each other, of any objections to the Presentence Report within fourteen (14) days of receipt.
Alternatively, counsel may file such objections not later than twenty-one (21) days before Sentencing.  The
Court construes "objections" to include departure arguments.  Any party intending to move for a
continuance of the Sentencing shall, not later than noon on the Monday preceding the Sentencing, notify
opposing counsel and the Courtroom Deputy.  Strict compliance with the above is mandatory because
untimely filings interfere with the Court's preparation for Sentencing.  Failure to meet these deadlines is
grounds for sanctions.*

# EXHIBIT D

 TOPICS

SUBSCRIBE
4 weeks for only 99¢

 LOG IN

TRIAL OFFER | **4 weeks for 99¢**

In rebuke of Dianne
Feinstein, Kevin de León
wins endorsement of...



Cave diver criticizes Musk's
kid-sub rescue plan. Musk
suggests he's a pedophile



On France's World Cu
roster, soccer [
national origins   ❯

L.A. NOW     LOCAL

# Judge orders L.A. Times to alter story about Glendale cop, sparking protest from newspaper

By **CINDY CHANG**
JUL 14, 2018 | 8:40 PM

  



John Saro Balian, shown in 2006, after he became a spokesman for the Glendale Police Department.
(Times Community News)

 

**A federal judge on Saturday ordered the Los Angeles Times to <u>remove information</u>**

from an article that described a plea agreement between prosecutors and a Glendale police detective accused of working with the Mexican Mafia, a move the newspaper decried as highly unusual and unconstitutional.

The agreement was supposed to have been filed under seal, but it was mistakenly made available on PACER, a public online database for federal court documents.

⌄

In response to the order from U.S. District Judge John F. Walter, The Times revised the article to eliminate information about the sealed document. The newspaper intends to contest the order.

⌃

"We believe that once material is in the public record, it is proper and appropriate to publish it if it is newsworthy," said Norman Pearlstine, executive editor of the Los Angeles Times.

⌄

Kelli Sager, an attorney representing The Times, said the 1st Amendment includes a strong presumption against government actions that prevent someone from speaking or publishing information.

⌃

The article, by reporter Alene Tchekmedyian, was posted Saturday morning, before the judge made his ruling.

"Typically, courts take into account if information was already published. Where it is no longer secret, the point of the restraining order is mooted," Sager said. "To order a publication to claw it back doesn't even serve the interest that may be intended."

Judge Walter did not explain in his order the legal justification for demanding that The Times withdraw the article.

⌄

The detective, John Saro Balian, pleaded guilty on July 12 to three counts: lying to federal investigators about his links to organized crime, accepting a bribe and obstructing justice by tipping off a top criminal target about an upcoming federal raid.

⌃

After the article was published, Balian's attorney sought a temporary restraining order, which Walter granted Saturday afternoon.

order, which Walter granted Saturday afternoon.

"To the extent any article is published prior to issuance of this order, it shall be deleted and removed forthwith," Walter wrote.

Walter said Balian had a good chance of prevailing on the issue and "the balance of equities tips in his favor." However, the judge ordered that Balian's motion not be given to The Times.

Balian's attorney, Craig Missakian, declined to comment.

Peter Scheer, former executive director of the First Amendment Coalition, said the plea agreement was "fair game," because it had been placed in the public domain.

"A news organization that wishes to write about the content has the right to do so under the 1st Amendment," Scheer said. "Whether or not a journalist should is a matter of editorial discretion or journalistic ethics. It's a separate matter. It's not a legal matter."

Scheer said that judges sometimes order material to be taken down from social media and other places after the fact, as with a domestic dispute where a spouse has posted derogatory material. He has seen it happen with media outlets too — "It's rare, but it does happen."

The judge may lack jurisdiction to order the L.A. Times to do anything, because the newspaper is not a party to the case and did not appear in his courtroom, Scheer said.

Scheer called the restraining order against The Times "a regrettable situation."

"There are good reasons to have strict limitations on judicial power to order things to be taken down and to order people to do things who aren't actually involved in the case," Scheer said. "Those limits are essential parts of our freedom and liberties under the Constitution."

According to prosecutors, Balian, 45, led a double life. As a detective, he investigated cases, interviewing witnesses and conducting background checks on suspects. He also

served for a time as the Glendale Police Department's spokesman.

He was identified as a person of interest by the FBI's Eurasian Organized Crime Task Force, which was probing ties between the Mexican Mafia and Armenian organized crime.

<u>During the investigation,</u> three confidential informants told authorities about troubling interactions with the detective, which were detailed in a 47-page affidavit by

Homeland Security Investigations Special Agent Michael Hyland.

In one case, an informant alleged that Balian tipped off a Frogtown gang member to a law enforcement sweep.

"Tell your boy Bouncer that he's the No. 1 on the list for tomorrow," Balian allegedly warned, according to the affidavit. It took agents another month to arrest the target.

The informant also alleged that Balian gave him locations of marijuana grow and drug stash houses — information he was privy to as an officer — and told him to "hit them" before law enforcement could execute their search warrants, according to the affidavit.

The informant said he and Balian communicated using "burners" — cellphones they used only with each other for no more than a month at a time. On one of the informant's phones, according to the filing, Balian's number was saved as "Bro."

When confronted by federal agents in four interviews over the last year, Balian lied about his ties to the Mexican Mafia and Armenian organized crime, authorities said.

Balian remains on unpaid leave. Last Friday, Magistrate Judge Alicia G. Rosenberg denied his request to be released on bond.

---



### Essential California Newsletter
Monday - Saturday

A roundup of the stories shaping California.

| ENTER YOUR EMAIL ADDRESS | ⟩ |
|---|---|

COMMENTS (34)

---

**LATEST NEWS**

---

### Looking at the next step of female storytelling, empowerment and rage

1h



---

### 'Skyscraper' collapses as 'Hotel Transylvania 3' lures family audiences to summer box office

1h



---

### Promises of cash, protection lure teens into smuggling drugs across border

2h



---

**LATEST L.A. NOW**

---

Fire near Yosemite explodes as officials mourn firefighter killed on front lines

21m



---

Promises of cash, protection lure teens into smuggling drugs across border

2h



---

More sidewalk tents, but fewer people living in them? The 2018 homeless count's new math

6:00 AM



---

Workers claim injuries all over their bodies for big payouts — but continue their active lives

5:00 AM



---

Trump closed little-known door for family reunification, leaving refugees stranded

5:00 AM



---

# Sign up for our newsletters

# Subscribe for unlimited access

About us

Contact us

Privacy policy

Terms

Site map

E-Newspaper

Corrections

Archives

Classifieds

Find a job

Shop

Advertising

    

Copyright © 2018, Los Angeles Times

# EXHIBIT E

**From:** Craig Missakian <craig@cmlawpartners.com>
**Date:** July 14, 2018 at 12:46:38 AM CDT
**To:** "jeffrey.glasser@latimes.com" <jeffrey.glasser@latimes.com>
**Subject: Urgent request**

Dear Mr. Glasser,

I represent John Balian who is the defendant in a criminal case now pending in U.S. District Court for the Central District of California. I am writing because I learned tonight that a Times reporter, Alene Tchekmedyian, has obtained a copy of Mr. Balian's confidential under seal plea agreement and is planning to write an article in which she intends to discuss certain key provisions of the agreement. Judge Walter, the judge assigned to the case, ordered that the plea agreement be sealed and not available to the public. We are still investigating how Ms. Tchekmedyian was able to obtain a copy but whether it occurred through inadvertence or intentional misconduct by court staff, the fact remains that it is subject to a court order that prevents its disclosure. Such disclosure is not only a violation of the court order but, possibly more important, will put Mr. Balian and his family at a grave risk of harm. In light of that, we hope the Times will choose the responsible (and legal) course of action and instruct Ms. Tchekmedyian not to publish the planned article. Needless to say, should the Times go forward with the article we will weigh all of our options, including seeking to hold the paper in contempt. I would be grateful for the opportunity to discuss the matter with you or someone on your staff as soon as possible. I can be reached by phone at 818-802-9811. Thank you.

Craig Missakian



116 Club Road, Pasadena CA 91105 | craig@cmlawpartners.com | 818.802.9811

1

# EXHIBIT F

| | |
|---|---|
| **From:** | Sager, Kelli |
| **Sent:** | Saturday, July 14, 2018 11:28 AM |
| **To:** | 'craig@cmlawpartners.com' |
| **Cc:** | Glasser, Jeffrey (jeff.glasser@latimes.com) |
| **Subject:** | Balian |

Mr. Missakian:

Your email to the Los Angeles Times demanding that it refrain from publishing information it lawfully obtained through the federal court's PACER system has been referred to me for response.

As you undoubtedly are aware, The Times <u>already</u> published an article concerning your client's plea agreement, and did so before your email that purported to give "notice" of a court order that you anticipate being entered, in response to an <u>ex parte</u> application that you have not served on our clients.  Consequently, your demand – which was received after the article was posted on latimes.com – is not well taken for that reason alone.  <u>In re Charlotte Observer</u>, 921 F.2d 47, 50 (4th Cir. 1990) (district court erred in issuing prior restraint where information already had been publicly disclosed; "[o]nce announced to the world, the information lost its secret characteristic").  If you have not told the Court that the information you are seeking to restrain already has been published, you should do so immediately.

In any event, well-established constitutional law prohibits the entry of prior restraints on publication, like the one you are demanding.  <u>See</u>, <u>e.g.</u>, <u>New York Times v. United States</u>, 403 U.S. 713 (1971); <u>Nebraska Press Ass'n v. Stuart</u>, 427 U.S. 539 (1976); <u>Hunt v. NBC</u>, 872 F.2d 289 (9th Cir. 1989).  Your assumption that the Times was somehow precluded from publishing information that it lawfully obtained – or could be punished for doing so – is also mistaken.  <u>See</u>, <u>e.g.</u>, <u>Florida Star v. BJF</u>, 491 U.S. 524 (1989).

The Times will vigorously oppose any attempt to restrain further publication of the information it lawfully obtained, or any attempt to punish it for exercising its First Amendment rights.

Sincerely,

Kelli Sager

**Kelli Sager** | Davis Wright Tremaine LLP
865 S Figueroa Street, Suite 2400 | Los Angeles, CA 90017
Tel: (213) 633-6821 | Fax: (213) 633-6899
Email: kellisager@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.

# EXHIBIT G

| | |
|---|---|
| **From:** | Craig Missakian <craig@cmlawpartners.com> |
| **Sent:** | Saturday, July 14, 2018 12:28 PM |
| **To:** | Sager, Kelli |
| **Cc:** | Glasser, Jeffrey (jeff.glasser@latimes.com); Mitchell, Jeff (USACAC) 5 |
| **Subject:** | RE: Balian |
| **Attachments:** | Order Granting Ex Parte Application .pdf |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Ms. Sager,

As you can imagine, I disagree with virtually all of your email and, at the appropriate time, will respond. In the meantime, enclosed is a copy of Judge Walter's signed order. I would be grateful if you would inform me whether the paper intends to comply with the Court's order and remove the article forthwith. Also, I am free to discuss the matter if you would like at any time. Thank you.

Craig



LAW OFFICES OF
CRAIG MISSAKIAN

116 Club Road, Pasadena CA 91105 | craig@cmlawpartners.com | 818.802.9811

**From:** Sager, Kelli [mailto:kellisager@dwt.com]
**Sent:** Saturday, July 14, 2018 11:28 AM
**To:** Craig Missakian
**Cc:** Glasser, Jeffrey (jeff.glasser@latimes.com)
**Subject:** Balian

Mr. Missakian:
Your email to the Los Angeles Times demanding that it refrain from publishing information it lawfully obtained through the federal court's PACER system has been referred to me for response.

As you undoubtedly are aware, The Times already published an article concerning your client's plea agreement, and did so before your email that purported to give "notice" of a court order that you anticipate being entered, in response to an ex parte application that you have not served on our clients.  Consequently, your demand – which was received after the article was posted on latimes.com – is not well taken for that reason alone.  In re Charlotte Observer, 921 F.2d 47, 50 (4th Cir. 1990) (district court erred in issuing prior restraint where information already had been publicly disclosed; "[o]nce announced to the world, the information lost its secret characteristic").  If you have not told the Court that the information you are seeking to restrain already has been published, you should do so immediately.

In any event, well-established constitutional law prohibits the entry of prior restraints on publication, like the one you are demanding.  See, e.g., New York Times v. United States, 403 U.S. 713 (1971); Nebraska Press Ass'n v. Stuart, 427 U.S. 539 (1976); Hunt v. NBC, 872 F.2d 289 (9th Cir. 1989).  Your assumption that the Times was somehow precluded from

1

publishing information that it lawfully obtained – or could be punished for doing so – is also mistaken.  See, e.g., Florida Star v. BJF, 491 U.S. 524 (1989).

The Times will vigorously oppose any attempt to restrain further publication of the information it lawfully obtained, or any attempt to punish it for exercising its First Amendment rights.

Sincerely,

Kelli Sager

**Kelli Sager** | Davis Wright Tremaine LLP
865 S Figueroa Street, Suite 2400 | Los Angeles, CA 90017
Tel: (213) 633-6821 | Fax: (213) 633-6899
Email: kellisager@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.

# EXHIBIT H

1  Craig H. Missakian (SBN 125202)
2  LAW OFFICES OF CRAIG
   MISSAKIAN
3  116 Club Road
   Pasadena, CA 91105
4  Telephone:  (818) 802-9811
5  Email: craig@cmlawpartners.com

6  Attorney for Defendant
7  John Saro Balian

8

9                   UNITED STATES DISTRICT COURT
10                  CENTRAL DISTRICT OF CALIFORNIA
11

12

13  United States of America,              Case No. CR 18-345-JFW

14              Plaintiff,

15                                          [PROPOSED] ORDER
                                            GRANTING *EX PARTE*
16       v.                                 APPLICATION AND ORDER TO
                                            SHOW CAUSE WHY A
17                                          PRELIMINARY INJUNCTION
                                            SHOULD NOT ISSUE
18  John Saro Balian,

19

20              Defendant.

21

22

23       Having considered the papers filed in support of Defendant's Ex Parte

24  Application for Temporary Restraining Order and Order to Show Cause Why a

25  Preliminary Injunction Should Not Issue ("the Application"), and for good cause

26

27  shown, the Court hereby enters the following Order:

28

The Court hereby GRANTS the Application, and finds that Defendant has shown (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary injunction relief; (3) that the balance of equities tips in his favor; and (4) that preliminary injunctive relief is in the public interest.

IT IS HEREBY ORDERED that the Los Angeles Times and each of its parent companies, subsidiaries, or affiliates (collectively "the Los Angeles Times"), directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee, and/or representative of the Los Angeles Times, be and hereby are ENJOINED from:

**Disclosing the under seal plea agreement in this case, in whole or in part, or publishing any article, piece, post, or other document whether in print or electronic format that quotes, describes, summarizes, references, relies on, or is derived in any way from the under seal plea agreement in this case and that it return forthwith any and all copies of such plea agreement in its possession to the United States Attorney's Office for the Central District of California.**

IT IS FURTHER ORDERED that the Los Angeles Times appear in the United States District court for the Central District of California, United States Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, Courtroom 7A on July 18, 2018 at 9:00 a.m. Pacific time and show cause why the Court should not enter a preliminary injunction imposing the terms set forth herein pending a hearing and ruling on defendant's anticipated motion for preliminary injunction.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IT IS FURTHER ORDERED that the Los Angeles Times shall serve and file

any papers in opposition to the continued restraint not later than 12:00p.m. Pacific

Time on July 16, 2018. Defendant shall file any reply not later than 9:00a.m.

Pacific Time on July 17, 2018.   The Los Angeles Times' opposition shall be filed under seal.

The defendant's reply shall be filed under seal.

IT IS FURTHER ORDERED that defendant shall serve the Los Angeles

Times with a copy of this order but not the *Ex Parte* Application forthwith.

To the extent any article is published prior to issuance of this order, it shall be deleted
and removed forthwith.

IT IS SO ORDERED.


July 14, 2018_____
DATE

JOHN F. WALTER
UNITED STATES DISTRICT JUDGE


Presented by,


_____
Craig H. Missakian
Attorney for Defendant
John Saro Balian

- 3 -

# EXHIBIT I

**From:**     Sager, Kelli
**Sent:**     Sunday, July 15, 2018 9:39 AM
**To:**       'Craig Missakian'; Mitchell, Jeff (USACAC) 5
**Cc:**       Glasser, Jeffrey (jeff.glasser@latimes.com); Charney, Brendan
**Subject:**  U.S. v. Balian


Counsel:

This serves as notice that Los Angeles Times Communications, LLC ("The Times") intends to file **today** an Emergency Petition Under Circuit Rule 27-3 For Writ Of Mandate to vacate the district court's unconstitutional prior restraint and its order to remove a news article from The Times' website.  We also will be concurrently filing an Emergency Motion For Stay, asking the Ninth Circuit to immediately stay the district court's order pending further proceedings.  We will send you the papers as soon as they are completed today.

We assume that both defendant John Saro Balian and the United States, respectively, oppose both the Petition and the stay motion; if that is incorrect, please let me know.

Sincerely,

Kelli Sager

**Kelli Sager** | Davis Wright Tremaine LLP
865 S Figueroa Street, Suite 2400 | Los Angeles, CA 90017
Tel: (213) 633-6821 | Fax: (213) 633-6899
Email: kellisager@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.